UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JULIE B., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:17-cv-00288-JAW |
| | ) | |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) ) | |
| | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION

On Plaintiff's application for disability insurance benefits under Title II (DIB) and supplemental security income benefits under Title XVI (SSI) of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments, but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court affirm the administrative decision.

### The Administrative Findings

The Commissioner's final decision is the February 18, 2016, decision of the Administrative Law Judge. (ALJ Decision, ECF No. 7-2.)[1] The ALJ's decision tracks the

---

[1] Because the Appeals Council found no reason to review that decision, the Acting Commissioner's final decision is ALJ's decision. (Notice of Appeals Council Action, R. 1, ECF No. 7-2.)

familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of degenerative disk disease, anxiety disorder, affective disorder, personality disorder, and substance abuse. (*Id.* ¶¶ 3 – 4.) The ALJ further found that, despite her impairments, Plaintiff has the residual functional capacity (RFC) to perform medium-exertion work that involves simple, routine tasks, provided the work requires no more than occasional stooping and does not involve any interaction with the public. (*Id.* ¶ 5.) Based on the RFC finding, Plaintiff's vocational profile, and the testimony of a vocational expert, the ALJ concluded that Plaintiff is able to perform substantial gainful activity existing in the national economy, including the representative occupations of laundry folder, photocopy machine operator, and assembler of small parts,[2] and that Plaintiff, therefore, was not under a disability during the period between October 9, 2011, and the date of the ALJ's decision. (*Id.* ¶¶ 6 – 7.)

**Standard of Review**

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*,

---

[2] The ALJ also found that Plaintiff has the RFC to perform past relevant work as a flagger. Defendant does not challenge Plaintiff's contention that the flagger occupation is precluded given that Plaintiff's RFC precludes interaction with the general public.

2

819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## Discussion

Plaintiff argues that the Court should remand her DIB and SSI claims for further proceedings because the ALJ failed to consider and weigh properly a Veteran's Administration (VA) disability rating decision and VA treating source opinions. (Statement of Errors, ECF No. 11.) In her Statement of Errors, Plaintiff specifically challenges the ALJ's decision regarding the extent of Plaintiff's mental health impairment.

### A. The ALJ's Assessment of Opinion Evidence

On July 30, 2014, as part of the initial review of Plaintiff's disability claim by Disability Determination Services, Peter Allen, Ph.D., opined that Plaintiff has the RFC for simple work. He determined that despite variable concentration with routine tasks over a normal workday and workweek, and despite social limitations that preclude work with the public, Plaintiff can function within a small group and tolerate normal supervision, but would do best in a relatively solitary workstation. (Ex. 2A, R. 89 – 90, ECF No. 7-3.)

On December 30, 2014, in connection with Disability Determination Services' reconsideration of Plaintiff's claim, Lewis Lester, Ph.D., provided a similar assessment. (Ex. 8A, ECF No. 7-3.) According to Dr. Lester, Plaintiff can understand and remember

3

simple and moderately detailed tasks and procedures, can be reliable and sustain two-hour periods performing simple tasks at a consistent pace without significant interruption from mental symptoms over a normal workday and workweek, cannot interact with the public, can interact with coworkers and supervisors in a normal setting, and can adapt to routine changes and make basic decisions. (R. 142 – 143.)

Among the evidence considered by Drs. Allen and Lester was the report of the July 10, 2014, consultative examination provided by James Moran, Ed.D.[3] (Ex. 26F, ECF No. 7-8.) Dr. Moran made the following findings and observations:

> …. Current results reveal signs and symptoms associated with dysthemia and borderline personality disorder.
>
> It is my professional opinion that there are mild-to-moderate impairments in her activities of daily living, mild impairments in her psychological and social functioning, no impairments in her ability to reason and concentrate, and it is not likely that she would decompensate or deteriorate quickly in a work setting.
> ….
> I believe the prognosis is fair. She is a woman with a long work history. The major impairment would be that at this time, she does not want to work, as she is suffering from persistent dysthemia.

(R. 619 – 20.)

On January 30, 2015, after Disability Determination Services completed its review of Plaintiff's disability claim, but before the ALJ issued her decision, the Department of Veterans Affairs issued a 100% disability rating decision to Plaintiff, retroactive to April

---

[3] Stacie Kunas, FNP-C, conducted a physical examination in September 2014. She noted in her source statement that Plaintiff was cooperative, had used public transportation to attend the examination, and had no difficulties with communication. Ms. Kunas noted that Plaintiff had some trouble following directions, but that the cause of the difficulty was unclear. (Ex. 29F, R. 672.)

24, 2014, based on symptoms associated with post-traumatic stress disorder (claimed as mental health personality disorder). (Ex. 8D, R. 249, ECF No. 7-5.) The decision was based in part on a report of a VA examination dated January 29, 2015, prepared by Kirsten Milliken-Zumel, a clinical psychologist. (Ex. 33F, R. 759 – 766, ECF No. 7-8.) Additionally, on December 2, 2015, Karen Olson, a psychiatrist for the VA, introduced certain progress notes (identified by Plaintiff as a subsequent psychiatric evaluation). (*Id.*, R. 753 – 758.) The ALJ reviewed Dr. Olson's treatment records in her recitation of Plaintiff's impairments. (R. 16 – 17.)

Plaintiff's treatment with VA providers appears to have been limited.[4] Plaintiff's longitudinal record reflects treatment with private providers. In February 2015, Plaintiff received notice of her VA benefit award. (Statement of Errors at 6.) In December 2015, Plaintiff declined the offer of an early appointment with the VA and elected to obtain mental health treatment at the Maine Medical Center. (R. 17, citing Exs. 33F, R. 750 – 51, 34F.) Evidently, at the time, Plaintiff was ineligible for VA health care. (Ex. 33F, R. 752, 768.) Additionally, at least for a time, she did not have her psychiatric medications because of her removal from the Medicare/MaineCare program. (R. 754, 767.)

Defendant denied Plaintiff's disability claim based on the ALJ's determination (a) that the longitudinal record did not support Plaintiff's subjective complaints; (b) that the Milliken-Zumel opinion was not worthy of much weight in part because she relied heavily

---

[4] Plaintiff applied for disability benefits under the Social Security Act in March 2014. (R. 12.) She applied for VA benefits in April 2014. (Statement of Errors at 3.) In effect, her claims proceeded on parallel tracks with separate evaluations by SSA and VA experts, respectively, who each applied different standards.

5

on Plaintiff's subjective statements, and because her opinion was inconsistent with the longitudinal record of conservative treatment, no inpatient treatment, and Plaintiff's lack of interest in treatment; (c) that Dr. Moran's assessment following examination that Plaintiff had only mild-to-moderate mental impairment was consistent with the record; and (d) the opinions of the Disability Determination Services consulting physicians were more supportable.[5] (R. 20 – 22.)

As mentioned above, Plaintiff argues the ALJ erred by failing to weigh properly the VA disability determination. (Statement of Errors at 10 – 16.) Relatedly, Plaintiff argues the ALJ erred when he failed to assign weight to Dr. Olson's opinion. (*Id.* at 16 – 17.) In particular, Plaintiff observes that the ALJ failed to note that Dr. Olson recommended a period of inpatient treatment for detoxification. (*Id.* at 17; Ex. 33F, R. 758.)

A VA disability determination is entitled to some weight in the SSA disability context. *Genness-Bilecki v. Colvin*, No. 1:15-cv-387-JHR, 2016 WL 4766229, at *2 – 3 (D. Me. Sept. 13, 2016) (collecting District of Maine precedent and recommending remand where the ALJ dismissed the VA rating decision "out of hand on the sole basis that the

---

[5] See Ex. 2A:10 – 12 (Peter Allen, Ph.D., July 30, 2014); Ex. 6A:11 – 13 (Lewis Lester, Ph.D., Dec. 30, 2014). The record associated with the Disability Determination Services opinions does not disclose any VA treatment records. The relevant VA records appeared in connection with Plaintiff's simultaneous pursuit of veterans' benefits. The relevant longitudinal treatment records were generated by private providers, and were reviewed by the Disability Determination Services consultants. Moreover, Disability Determination Services performed a consultative mental examination (clinical interview) prior to obtaining the RFC opinions from Drs. Allen and Lester. (Ex. 26F, James Moran, Ed.D, July 10, 2014.) Dr. Lester also had the benefit of the physical examination report of Stacie Kunas, FNP-C (Ex. 29F, September 26, 2014). At the consultative exams, particularly the clinical psychological exam, Plaintiff related much of her psychiatric history to the consultants.

6

standards differ," even though the ALJ evidently reviewed and discussed the treatment record that informed the VA decision).[6] In this case, the ALJ considered the VA rating, and assesed the opinion evidence associated with Plaintiff's VA benefits award, including the disability benefits questionnaire completed by Kirsten Milliken-Zumel. (Ex. 33F, R. 759 – 764). (R. 21.) and treatment. Significantly and in contrast to *Genness-Bilecki*, after considering Dr. Milliken-Zumel's opinion submitted in connection with the VA disability proceeding, which opinion was apparently used to support the VA rating, and after considering the rating, the ALJ discussed the weight she gave to the VA rating and the opinion of Dr. Milliken-Zumel (i.e., "little weight" to both), and provided sound reasons for not giving the opinion more weight.[7] For example, the ALJ noted that Dr. Milliken-Zumel based her opinon on Plaintiff's subjective complaints, which were not consistent the longitudinal record.

The lack of discussion of Dr. Olson's opinion in the context of the ALJ's RFC assessment is also understandable. Dr. Olson opined that Plaintiff would benefit from inpatient alcohol abuse treatment. Dr. Olson's opinion, however, did not address Plaintiff's RFC. The ALJ, therefore, did not err when she did not discuss Dr. Olson's opinion as part of the RFC assessment.

---

[6] The ALJ decision in *Genness-Bilecki* lacked any discussion of the VA ratings or the medical opinions that informed them, as opinion evidence. (No. 1:15-cv-387-JHR, ECF No. 14-2, R. 31.)

[7] Although the ALJ gave the VA finding of total incapacity little weight, the ALJ incorporated some of Dr. Milliken-Zumel's findings in Plaintiff's RFC. For instance, Dr. Milliken-Zumel found agoraphobia and memory were of significant concern. The RFC as assessed by the ALJ precluded public interaction and limited Plaintiff to simple work.

Given the legitimate concerns with the opinion of Dr. Milliken-Zumel, the ALJ's decision to rely upon the consulting experts was reasonable. The consulting experts' opinions are consistent with Plaintiff's history and the longitudinal record and directly address the applicable standard. Furthermore, while the ALJ did not discuss the VA rating in depth, the ALJ did not dismiss the rating entirely, but instead gave the rating some (i.e., "little") weight and discussed in more detail the medical opinion upon which the rating was evidently based. In short, the ALJ did not err in her discussion of the VA rating, and the ALJ's findings are supported by substantial evidence on the record.

**B. Step 4 Challenge**

At step 4, the ALJ concluded that Plaintiff would be able to perform past relevant work as a flagger. (R. 22.) Plaintiff argues the ALJ erred because a flagger must at time interact with members of the public. (Statement of Errors at 18.) Defendant does not argue otherwise, and this Court has previously concluded that the job of flagger entails some interaction with the public. *Keefe v. Astrue*, No. 1:09-cv-116-JAW, 2009 WL 5216059, at *4 (D. Me. Dec. 29, 2009), rec. dec. adopted, 2010 WL 276730 (Jan. 19, 2010); *Leighton v. Astrue*, No. 1:07-cv-142-JAW, 2008 WL 2593789, at *3 (D. Me. June 30, 2008), rec. dec. adopted, 2008 WL 2858817 (July 22, 2008); *Bartlett v. Barnhart*, No. 1:05-cv-23-JAW, 2005 WL 1923518, at *3 (D. Me. Aug. 9, 2005), rec. dec. adopted, 2005 WL 2100948 (Aug. 29, 2005). An error at step 4 is harmless, however, if the ALJ's alternative step 5 finding is sustained. *Donaher v. Barnhart*, No. 1:05-cv-195-JAW, 2006 WL 2827651, at *5 (D. Me. Sept. 29, 2006), rec. dec. adopted, 2006 WL 2975459 (Oct. 16, 2006).

8

## C. Step 5 Challenge

At step 5 of the evaluation process, the burden shifts to the Commissioner to establish that the jobs a claimant can perform exist in the national economy in significant numbers, giving particular attention to the claimant's age, education, work experience, and residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4)(v), (g)(1), 416.920(a)(4)(v), (g)(1); *Goodermote v. Sec'y of HHS*, 690 F.2d 5, 7 (1st Cir. 1982). This burden is typically addressed through a combined reliance on the Medical–Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, and the testimony of a vocational expert, who is asked to consider one or more hypothetical RFC findings. *Goodermote*, 690 F.2d at 7; *Arocho v. Sec'y of HHS*, 670 F.2d 374, 375 (1st Cir. 1982).

According to Plaintiff, the vocational expert testimony does not support a finding that she could perform other substantial gainful activity because the record does not establish that the representative jobs (laundry folder, photocopy machine operator, and assembler of small parts) can be performed by someone who can only occasionally stoop, is limited to simple routine tasks, and cannot interact with the public. (Statement of Errors at 19 – 20.) Contrary to Plaintiff's argument, the record reflects the vocational expert considered the limitations when identifying the representative jobs. (Hr'g Tr. at 35 – 37, R. 72 – 74, ECF No. 7-2.) The vocational expert's testimony constitutes substantial evidence in support of the ALJ's step 5 finding.[8]

---

[8] At oral argument, Plaintiff's counsel noted that the photocopy machine operator job may also be unavailable due to Plaintiff's inability to interact with the public. Even if one accepts the argument, the two remaining jobs satisfy Defendant's burden at step 5. "The Commissioner may satisfy his step 5 burden with evidence concerning a solitary occupation." *Langley v. Soc. Sec. Admin. Comm'r*, No. 1:11-cv-00071-DBH, 2012 WL 379937, at *10 (D. Me. Feb. 3, 2012), rec. dec. adopted sub nom. *Langley v. Astrue*, 2012

9

## Conclusion

Based on the foregoing analysis, I recommend the Court affirm the administrative decision.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 22nd day of August, 2018.

---

WL 589658 (Feb. 22, 2012) (citing 20 C.F.R. §§ 404.1566(b), 416.966(b) (calling for "a significant number of jobs (in one or more occupations)").